[Civ. No. 7783.   Third Dist.   May 12, 1950.]

EDWARD McROSKEY MATTRESS COMPANY (a Corporation), Respondent, v. FRANCHISE TAX BOARD, Appellant.

Fred N. Howser, Attorney General, and James E. Sabine and Irving H. Perluss, Deputy Attorneys General, for Appellant.

Winston A. Langlois for Respondent.

VAN DYKE, J.—Respondent corporation was, during the period with which we are here concerned, a domestic corporation doing business within the state. As such it was subject to franchise taxes imposed by the Bank and Corporation

Franchise Tax Act [Deering's Gen. Laws, Act 8488]. For the taxable year ending December 31, 1941, it reported to the Franchise Tax Commissioner its net income and paid a tax thereon. On August 10, 1943, proceedings were begun to assess an additional tax, based upon a revision of respondent's net income as so reported. Administrative proceedings followed, as a final result of which respondent was compelled to pay an additional tax of $637.24, with interest. This it paid under protest and, having exhausted its administrative remedies, it brought this action to recover the money so exacted. The situation which the commissioner claims justified the additional tax may be briefly stated as follows:

For a long time prior to the incidents which are about to be related, Edward L. McRoskey was the owner of approximately 77 per cent of the corporation's issued stock and was also the managing head of the corporation. With the exception of a few qualifying shares his two sons owned the balance of the issued stock. McRoskey was entitled to receive a salary of $1,000 per month and was credited with that amount upon the books of the corporation regularly as the same accrued, but did not receive payment in full. The account was carried on the books of the corporation as a "drawing account," and as time passed the amount unpaid grew until over $7,000 was owing to McRoskey. Then $7,000 was taken from the "drawing account" and was transferred to another liability account of the corporation entitled "Notes Payable." The balance owing McRoskey in the drawing account continued to accumulate until on December 31, 1940, the amount owing him in both accounts totaled nearly $30,000. On that date the corporation was solvent and had money on deposit in bank in excess of $15,000. McRoskey instructed the secretary of the plaintiff to charge the balance to his credit in the account "Notes Payable," to the extent of $7,375, and to charge his drawing account with $8,000, and to credit the total, $15,375, to an account entitled "Donated Surplus." These instructions were carried out and the respondent's books have at all times since reflected said transaction, without change.

McRoskey testified, when asked to explain in his own words what took place, that a new excess profit tax had been enacted and the secretary of the corporation had told him the corporation could not get credit for the amount of accrued salary money that it had been using unless he, McRoskey, "deeded that money to the corporation." So, said McRoskey, "since

I owned most of the stock I told him to transfer that money to the corporation so that we could get the proper credit for the amount of money being used in the business, which he did.'' He said he had reported all of his salary through the years on an accrual basis and paid an income tax thereon, and it was his wish then to take the undrawn salary to his credit and ''donate it to an account called 'Donated Surplus.' '' He further said that the corporation had, through the years, deducted his salary each year in making its returns. Both he and the corporation reported on an accrual basis

The trial court found the foregoing facts, and further found that when McRoskey's instructions to the secretary of the plaintiff were carried out, he, McRoskey, received constructive payment by the plaintiff corporation of the sum of $15,375, which sum he thereupon donated to the capital of said plaintiff corporation, and that ''said transaction did not constitute a cancellation or forgiveness of the plaintiff corporation's indebtedness which had previously been owing to Edward L. McRoskey.''

At the time the foregoing events occurred, section 6(d) of the Bank and Corporation Franchise Tax Act read as follows:

''If the indebtedness of a bank or corporation is canceled or forgiven in whole or in part without payment, the amount so canceled or forgiven shall constitute income to the extent the value of the property (including franchises) of the bank or corporation exceeds its liabilities immediately after the cancellation or forgiveness. . . .''

Appellant contended in the trial court that the sum of $15,375, above referred to, by reason of the foregoing transactions, became a part of the taxable income of respondent corporation and that the Franchise Tax Commissioner was correct in levying the additional tax. The trial court decreed that respondent should recover the tax so demanded and paid, with legal interest, and from that judgment this appeal has been taken.

The statute is plain. Whenever the indebtedness of a bank or corporation is canceled or forgiven by the creditor without payment, the amount so canceled or forgiven constitutes a taxable gain. The idea underlying the legislation is that by the event described the assets of the taxpayer are increased with exactly the same effect which results from income derived from any other source. The franchise tax is declared by the statute to be ''a tax according to or measured by'' the corporation's net income. The net income is to be com-

puted by taking from the gross income, as defined by section 6 of the act, all allowable deductions. Section 6, in defining gross income, includes by the terms of subsection (d) all gains from debt cancellation or forgiveness. There are no exceptions. Whenever and however the event occurs, liability for the tax arises.

The words "without payment" as used in section 6(d) serve no purpose other than to emphasize the idea that cancellation or forgiveness, to result in a taxable gain, must be gratuitous—a gain for which no direct consideration passed from the taxpayer. Certainly there could be no forgiveness with payment.

When McRoskey, acting with a single and continuous purpose as described by himself, caused the corporation's secretary to transfer the amount owed him by the corporation from the liability accounts to surplus, he brought about the very taxable gain defined in the statute. He made void, by act of forgiveness, the chose in action he owned—he intended to do this gratuitously, that is without receiving anything directly from the corporation. When the transaction is viewed in this light, the finding of the trial court that he received "constructive payment" is of no import. So long as his whole and continuous purpose and plan was to cancel and forgive the debt it would have mattered not at all if he had arrived at his goal by the circuitous route of first drawing the money out of the corporation's funds and then putting it back in. Whether he forgave and cancelled directly as he did, or first drew out and then put back, would have made no difference if the method used was throughout a means adopted to arrive at gratuitous cancellation or forgiveness. His purpose throughout being to do that which would bring to the corporation a taxable gain as defined exactly by the statute, the fulfillment of that purpose rendered the corporation so acquiring the gain liable for the tax. Of course it is not material whether McRoskey considered that the corporation did or did not have to pay a tax upon his gratuity.

Respondent argues that because the trial court made specific findings that McRoskey received constructive payment and thereupon made a donation to the corporation, the transaction did not constitute a cancellation or forgiveness. It is elementary that where a determination of fact is to be made, such determination made by the trier of fact, upon

sufficient evidence, binds a court of review, and respondent says that this precludes this court on review from arriving at a conclusion that the corporation received a taxable gain. But the answer to this argument is that the ultimate question involved is whether or not the corporation did receive a taxable gain, not how it received it. It cannot be gainsaid that if McRoskey forgave the debt gratuitously, which he did, and the corporation thereby obtained the taxable gain described in the statute, then the tax must be paid; and the court's finding that there had been no cancellation or forgiveness as defined by the statute is but a conclusion based upon facts which do not support it. We have already said that within the framework of this statute there is no room for any doctrine of constructive payment. McRoskey himself stated plainly what occurred, and the statute just as plainly states that thereby the corporation received a taxable gain.

The judgment is reversed.

Adams, P. J., and Peek, J., concurred.